MARTHA ISAACS, Appellee, v. EASTERN IOWA LIGHT & POWER COOPERATIVE, Appellant.

No. 46705.

JUNE 19, 1945.

Cook, MacLaughlin, Blair & Balluff, of Davenport, and Dutcher, Ries & Dutcher, of Iowa City, for appellant.

D. C. Nolan, of Iowa City, for appellee.

HALE, C. J.— This is an action for damages for injuries occasioned by electric current from appellant's transmission line in Johnson County, Iowa. Count I of plaintiff's petition relies upon the presumption of negligence created by section 8323, Code of Iowa, 1939, and Count II, which was withdrawn by the trial court, was for specific acts of negligence. The allegations we have to consider are based on Count I. Appellant in its answer denied any negligence and averred that appellee's injuries were due to an act of God and an unavoidable casualty. Motion of appellant for directed verdict was overruled and the verdict of the jury was in favor of appellee.

The line owned and operated by appellant is in Johnson county. The injuries sustained occurred about two and one-half miles southwest of Iowa City, on a rural highway running past what is known as the Kelly farm and appellee's home. The transmission line runs northward along and parallel with the east side of the road until it reaches the Kelly farmyard, where, to avoid a grove of trees, the line crosses to the west side of the road and continues northward along the west side for several hundred feet, when it recrosses the road to the east side and continues northward from that point. The accident occurred at the north crossing of the line from the west to the east side of the road, and the pole involved in the accident is the first pole north of the Kelly farmyard on the east side of the road. A telephone line which served appellee's home, her brother's place, and other homes in that vicinity runs along the west side of the road where the accident occurred. From this telephone line there was a two-wire lead-in line into the Kelly house, extending across the road and under the transmission line. The pole immediately north of the Kelly farmyard is braced with a guy

wire at a point attached to the pole about eighteen inches from the top. The transmission wire was suspended between insulators mounted on the pole which held the wire about three inches above the top of the pole. These insulators were held to the pole by means of twelve-inch pins bolted to the pole at the sides.

During a rainstorm a bolt of lightning struck the top of the pole and the upper eighteen inches of the pole were shattered, causing the conducting line, with the attached insulators and pins, to fall on the surface of the roadway in such a manner that the insulators and pins rested on the ground but held the wire off the road. The injury to the transmission line at the angle where the pole was situated allowed the line to sag down to and across the highway a little distance above the surface of the ground. The space between the shattered pole and the next pole north on the east side of the road was about two hundred feet and it was the same distance from the next pole south on the west side of the road. The wire involved was not insulated. There was a circuit breaker about fifteen miles away but the day after the accident appellant installed a new circuit breaker about an eighth of a mile south of the scene of the accident.

Appellee was awakened about 3 a. m. on August 23, 1943, and discovered that the home of her parents, with whom she lived, was on fire and the telephone wires encircling the house were flaming. She attempted to turn on the lights but they were very dim. She tried the telephone and it did not work. She then got in her automobile and drove to her brother's house and at his suggestion she started to town to get the electricity shut off, and while traveling north her automobile came in contact with the live transmission line which was sagging down onto the highway immediately north of the Kelly farm and about a mile from her parents' home. When appellee's automobile struck the live wire a sharp flash or ball of fire enveloped the car and caused her to lose control and the car went into the ditch on the right side of the road, injuring appellee and damaging the car. The burned area on the car showed it came in contact with the transmission line and there was also a burned area on the electric line showing it was in contact with the telephone line.

The error complained of by appellant is that the court erroneously overruled its motion for directed verdict, which in substance alleged that appellee failed to meet the burden of proving appellant guilty of negligence and that the undisputed evidence shows as a matter of law the absence of negligence on the part of appellant.

Section 8323, Code of Iowa, 1939, so far as applicable here, is as follows:

"In case of injury to any person or property by any such transmission line, negligence will be presumed on the part of the person or corporation operating said line in causing said injury, but this presumption may be rebutted by proof."

Section 8326 prescribes the manner in which such lines shall be built and maintained. A part of said section sets out the rules for crossing other wires as follows:

"Where wires carrying current are carried across, either above or below wires used for other service, the said transmission line shall be constructed in such manner as to eliminate, so far as practicable, damages to persons or property by reason of said crossing. There shall also be installed sufficient devices to automatically shut off electric current through said transmission line whenever connection is made whereby current is transmitted from the wires of said transmission line to. the ground, and there shall also be provided a safe and modern improved device for the protection of said line against lightning."

I. Appellant argues that the presumption of negligence created by section 8323 shifted to appellant the duty of going forward with the evidence but the burden of proof nevertheless remained upon appellee, citing Walters v. Iowa Elec. Co., 203 Iowa 471, 212 N. W. 884. That case does not support this contention, but holds that the burden was on defendant. However that may be, the case holds that the proof of the damage and proof that fire was communicated by crossing of said line, plus the statutory presumption of negligence, made a prima facie case for recovery. See, also, Beman v. Iowa Elec. Co., 205 Iowa 730, 735, 218 N. W. 343, 346, where it is said:

"It was upon the defendant to rebut that presumption, and to show that the injury and resulting damage were not caused by any act or omission on the part of the owner of the transmission line." Citing the Walters case.

Appellant argues that the rules of evidence are analogous to those applied in cases involving the doctrine of res ipsa loquitur. It is further argued that as in other cases involving rebuttable presumptions, the burden of going forward with the evidence reverted to the appellee when the proof of the appellant disclosed the lack of negligence on its part, citing Schaeffer v. Anchor Mut. F. Ins. Co., 133 Iowa 205, 100 N. W. 857, 110 N. W. 470, in which a presumption was conclusively negatived; State v. Butler, 186 Iowa 1247, 173 N. W. 239, which holds that if the avoidance of the presumption had no flaw the indictment must fail; and Kauffman v. Logan, 187 Iowa 670, 174 N. W. 366, holding that presumptions must give place when in conflict with clear, distinct, and convincing proof.

Appellant also cites Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A., N. S., 226, Ann. Cas. 1912A, 463; and Western & A. R. Co. v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884. The latter case merely recites the well-known rule that a prima facie presumption casts upon the person against whom it is applied the duty of going forward on the particular point to which the presumption relates. The Turnipseed case discusses the question of the effect of a statutory rule of liability and the necessity of defendant's going forward with the evidence, saying, at page 43 of 219 U. S.:

"In default of such evidence, the defendant, in a civil case, must lose, for the prima facie case is enough as matter of law."

We do not think that it is important, so far as this case is concerned, whether we consider the burden shifted or that appellant must go forward; nor is it important whether the rules governing this statutory presumption are analogous to those governing the doctrine of res ipsa loquitur. Our concern primarily is whether the evidence in this case created a jury

question. We may assume the rules are, as argued, the same as in res ipsa loquitur. The general rule as to the latter is found in 45 C. J. 1221, 1223, section 784: "* * * the weight of the inference as well as the weight of the explanation is for the determination of the jury."

To overcome the presumption the evidence must be clear and convincing. See Kauffman v. Logan, supra. If the presumption of negligence is not so overcome the presumption must stand. It follows as a matter of course that the presumption created by statute could not be said to have been overcome unless the evidence of appellant rebutted the presumption of negligence at all points so that the court could say as a matter of law that appellee's testimony had been completely rebutted.

II. Appellant argues that it constructed and maintained its transmission line in accordance with the requirements of the National Safety Code and that this overcame the statutory presumption of negligence, relying upon the cases of Shettler v. Farmers L. & P. Co., 233 Iowa 1243, 11 N. W. 2d 394; and Smith v. Iowa Public Service Co., 233 Iowa 336, 6 N. W. 2d 123. These cases do not sustain appellant's contention. Both cases speak of the Safety Code as accepted as a standard of construction and upkeep and that it is difficult to conceive of a better test of care than compliance with its provisions; but neither holds that proof of compliance overcame the statutory presumption of negligence.

The ruling in the Shettler case was based on contributory negligence and the court held as a matter of law that the rule of res ipsa loquitur did not apply, saying at page 1246 of 233 Iowa, page 396 of 11 N. W. 2d:

"And appellant is not entitled to rely upon the provisions of Code section 8323, since this presumption, as in the doctrine of res ipsa loquitur, would apply only where general negligence is pleaded." Citing cases.

Also, in the Smith case there were specific acts of negligence pleaded, with no reference to the general statutory presumption, and, so far as the pleaded grounds of negligence are concerned, the power line was held to be constructed in accordance with the provisions of the safety code, and the trial court and this

court found no neglect of duty owed by defendant to the injured workman and directed verdict for defendant.

In neither of these cases, it will be noted, did the court hold that the statutory presumption of negligence was overcome by proof of compliance with the safety code, but held that as to specifications pleaded the safety code would be accepted as a standard. In the present case appellee's petition is based on the presumption, and in the two cited cases the allegations of negligence are based on specific acts and therefore necessarily could not be based on the general statutory provision.

Did the evidence introduced by appellant completely rebut the presumption of negligence created by the statute so that the court could say as a matter of law that the presumption was overcome? We are not inclined to say it did. While we have accepted as a rule of safety the specifications of the National Safety Code, the record here fails to show such code was offered in evidence. There is some reference in the testimony to said code itself as an exhibit, although the record fails to disclose that it was ever offered as such. But we do not need to determine whether the code was in evidence. Assuming that it was, there were instances not covered by the code so far as there is any reference to it in the record before us. We may consider so far as the code speaks it may be deemed of value. But it does not have the force of a statute. The rules laid down in section 8326, Code of Iowa, 1939, heretofore set out, provide that where the wires carrying current are carried across, either above or below, wires used for other service, the said transmission line shall be constructed in such manner as to eliminate, so far as possible, damage to persons or property by reason of said crossing. It also provided, as stated, for circuit breakers. The evidence, without objection, shows that the nearest circuit breaker was fourteen or fifteen miles away and that on the day following the accident appellant installed a circuit breaker in the immediate neighborhood. Under the evidence it constituted a question of fact whether or not the company had complied with these requirements of the Iowa Code. The expert witness for appellant admitted that a proper ground wire on the pole struck by lightning might have protected such pole.

Another witness, a lineman, testified that if another pole had been installed near the damaged pole there would have been no sagging down of the transmission line to the road. There was evidence that the only practical way of insulating live wires is by isolating them. The expert also admitted that the element of chance of injury and damage is taken into consideration in construction of all electric transmission lines, including the line involved, in order that the construction may be what is called practical. Even if the safety code had been admitted in evidence, so far as our record shows there was no evidence of any provisions therein for the manner of affixing wires or conductors to insulators or insulators to poles. A witness for appellee testified that there are no such recommendations in said code and there is no specification of the kind of lightning arresters or protectors to transmission lines and nothing to indicate what would be a proper distance between circuit breakers. The evidence shows questions of fact upon which the jury could base its decision, and the presumption of negligence was not eliminated by such a clear and complete showing on the part of appellant as to nullify it or to make a question of law for the court. A mere showing on the part of appellant that it had complied in some respects with the National Safety Code was not sufficient to overcome the presumption.

The only question we have to determine is whether or not there were such questions of fact presented as to make a jury question. We are satisfied that there were such and that the ruling of the court in overruling the motion for directed verdict was correct and the verdict of the jury should stand. The judgment of the court should be, and it is, affirmed.—Affirmed.

All JUSTICES concur.