296 Md. 190 (1983)
461 A.2d 1077
WASHINGTON COUNTY DEPARTMENT OF SOCIAL SERVICES
v.
MARY ALICE CLARK
[No. 142, September Term, 1982.]
Court of Appeals of Maryland.
Decided June 23, 1983.
The cause was argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.
Margaret E. Rawle, Assistant Attorney General, with whom were Stephen H. Sachs, Attorney General, and Joseph Chukla, Jr., on the brief, for appellant.
Elizabeth Renuart for appellee.
COUCH, J., delivered the opinion of the Court.
We are here concerned with claims of alleged error by the Circuit Court for Washington County in dismissing a petition for guardianship with the right to consent to adopt filed by the appellant, Washington County Department of Social Services (the Department). For reasons to follow below, we shall affirm in part, reverse in part, and remand for further proceedings.
The genesis of the present controversy occurred in 1979 when the appellee, Mary Alice Clark, mother of the five minor children who are the subject of appellant's petition, contacted the appellant for services. Homemaker service *192 was provided and marriage counseling recommended, although Mr. Clark had allegedly already deserted the family. Subsequently, in 1980, the children were removed from the home pursuant to an order from the juvenile court and placed in foster care. After two years in such placement elapsed, the instant petition was filed based on Maryland Code (1957, 1981 Repl. Vol.), Article 16, § 75.[1] Following a hearing, the chancellor dismissed the petition on two grounds: (1) the presumption of best interests of the children provided in the statute was unconstitutional, and (2) the appellant had failed to show by clear and convincing evidence that the parental rights of Mrs. Clark should be terminated as being in the best interests of the children. An appeal to the Court of Special Appeals was taken by the Department; we granted certiorari prior to consideration by that court to determine issues of public importance.
The appellant has raised four issues before this Court:
"1. Whether the two year presumption contained in Maryland's adoption law (Md. Ann. Code Art. 16, § 76(c) is constitutional.
2. Whether the Chancellor erred in failing to apply the test of the best interest of the child to these proceedings.
3. Whether the Chancellor erred in failing to consider all of the factors required to be considered by Maryland Annotated Code, Art. 16, § 76(b).
4. Whether the Chancellor's failure to appoint counsel to represent the children requires a remand of the case."

(1)
Section 76 of Article 16, Md. Code (1957, 1981 Repl. Vol., *193 1982 Cum. Supp.),[2] effective July 1, 1982, and thus controlling this case which was heard and ruled upon *194 thereafter, is a comprehensive statutory scheme governing adoptions or guardianship of minors when the consent of the natural parents has not been obtained. As can be seen, the legislature has provided in sub-section (a) that the court may grant a decree if it finds by clear and convincing evidence that termination of the natural parents' rights is in the child's best interest and that one or more of certain designated circumstances exist. By sub-section (c), however, the legislature provided that when a child has been under continuous foster care in the custody of a child placement agency for at least two years (as here), the court shall presume that it is in the child's best interest to award to that child placement agency a decree granting guardianship, without the consent of the parents. Thus the requirement of "clear and convincing evidence" has been eliminated, the effect being that upon the mere showing of the two-year period of continuous foster care the "best interests of the child" is presumed and the decree should be granted, or, said another way, the legislature has provided that the presumption supplies the "clear and convincing evidence" requirement of sub-section (a) unless overcome by evidence to the contrary offered by the parent.
*195 The chancellor found sub-section (c) of § 76 unconstitutional on the authority of Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In that case, the Supreme Court held that before a State may sever completely and irrevocably the rights of parents in their natural child, due process required that the State support its allegations by at least clear and convincing evidence; it therefore concluded that New York's "fair preponderance of the evidence" standard prescribed by its Family Court Act for the termination of parental rights denied the parents due process.
In his Memorandum Opinion filed in the case sub judice, the chancellor quoted extensively from Santosky and concluded:
"Based upon the Court's interpretation of the law decided in Santosky, which this Court is duly bound to follow, Sec. 76 (c) of Art. 16 is not constitutional. Santosky holds that in a case to terminate parental rights on a permanent basis, the minimum standard of proof to satisfy due process must be by clear and convincing evidence.
The statutory presumption created by Art. 16, Sec. 76 (c) fails to meet the minimum standard  clear and convincing evidence  mandated under the Santosky holding. Therefore, the court holds that Art. 16, Sec. 76 (c) is unconstitutional."
The appellant asserts that "[t]he Chancellor's reliance on Santosky was misplaced" as that case "does not prohibit the use of presumptions in cases involving the termination of parental rights." Relying on Mobile, Jackson, & Kansas City Railroad v. Turnipseed, 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 *196 L.Ed. 78, 80 (1910), appellant contends that a presumption is constitutional when there is "some rational connection between the fact proved and the ultimate fact presumed" and that this standard is met in Art. 16, § 76 (c) because "it is highly probable that it is in the best interest of a child who has been in foster care for over two continuous years to have parental rights terminated in the absence of evidence to the contrary." (Footnote in appellant's brief omitted). Moreover, appellant urges us to uphold the constitutionality of the presumption in § 76 (c) on the basis of Keeney v. Prince George's County, 43 Md. App. 688, 406 A.2d 955 (1979), cert. denied, 286 Md. 748 (1980), wherein the Court of Special Appeals held that the predecessor to § 76 (c) (i.e., Code (1957, 1981 Repl. Vol.), Art. 16, § 75) did not offend either equal protection or due process.
Appellee, on the other hand, contends that the chancellor correctly relied on Santosky and that § 76 (c) is unconstitutionally violative of the due process clause in that it fails to specify a standard of proof. Alternatively, appellee argues that § 76 (c) places an unconstitutional burden of proof upon the parents.
In our view, the instant case does not have the problem that was raised in Santosky since the Maryland statute requires clear and convincing evidence. The problem here simply is whether the legislature may satisfy the due process rights of Mrs. Clark by providing, by presumption, the clear and convincing proof needed to warrant termination of her parental rights to raise her children. We think not.
In Santosky, the Supreme Court clearly reaffirmed its earlier holdings that "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." 455 U.S. at 753, 102 S.Ct. at 1394, 71 L.Ed.2d at 606 (numerous citations omitted). That is to say that, in such instances, the parents are entitled to due process and that due process requires that permanent termination of the parents' right to the care, custody and management of their child will not be granted except upon clear and convincing evidence. Furthermore, the Supreme *197 Court has held that a State statutory evidentiary presumption may not be inconsistent with a matter of federal constitutional law. See New York Times Company v. Sullivan, 376 U.S. 254, 283-84, 84 S.Ct. 710, 727-29, 11 L.Ed.2d 686, 708-09 (1964). Nor can the creation of a statutory presumption be a means of escape from constitutional restrictions. Bailey v. Alabama, 219 U.S. 219, 239, 31 S.Ct. 145, 150-51, 55 L.Ed. 191, 200 (1911).
In the instant case, the legislature, while requiring clear and convincing evidence that termination is in the best interests of the child, has provided that such standard shall be presumed when the child has been in foster care for two or more continuous years, thus relieving the State of any further burden of proof. In our view, a parents' right to procedural due process is violated by such presumption. Accordingly, we hold that sub-section (c) of § 76, Art. 16, is unconstitutional.[3]

(2)
Subsequent to holding § 76 (c) unconstitutional, the chancellor proceeded to "consider whether the Department of Social Services is entitled to the relief it seeks under any alternative theory." Specifically, the chancellor considered the petition and relief sought in terms of sub-sections (a) and (b) of § 76. See note 2 herein. After going through the various provisions of these sub-sections and giving an in-depth analysis of the facts of the instant case, the chancellor concluded:
"The efforts made by the Department of Social Services, in light of the drastic relief it seeks  to terminate her parental rights forever  were too little and too late. * * * The Court is not persuaded by clear and convincing evidence that the Department has met its burden of proof. * * *

*198 In the words of Santosky, the factfinding does not purport  and is not intended  to balance the child's interest in a normal family home against the parents' interest in raising the child. Nor does it purport to determine whether the natural parent or the foster parents would provide the better home. Rather, the factfinding hearing pits the State directly against the parent. The State alleges here that the natural parent is at fault. In order to find for the Department of Social Services at this time, the Court must find that Mrs. Clark is unfit to raise her own children."
Appellant argues that the chancellor erroneously applied a standard of parental fitness rather than the best interests of the child. We find this argument to be without merit. It is well established, and § 76 makes it very clear, that when the State seeks to terminate parental rights without the consent of the parents, the matter should be determined on the basis of what is in the best interest of the child. See, e.g., Shetler v. Fink, 231 Md. 302, 306-07, 190 A.2d 76, 78 (1963); Winter v. Director, 217 Md. 391, 395-96, 143 A.2d 81, 84 (1958), cert. denied, 358 U.S. 912, 79 S.Ct. 242, 3 L.Ed.2d 233 (1958). We believe the chancellor correctly considered the best interests of the children in reaching his decision. Throughout his Memorandum Opinion, the chancellor made numerous references to this standard. Appellant has taken one statement out of a 13 page Memorandum Opinion and, on the basis of that statement, argues the chancellor applied the wrong standard. In fact, in the very next sentence, the chancellor pointed out that "[t]he indefinite continuation of the status quo is clearly not in the best interest of the five Clark children. * * * " Accordingly, we find no error in this regard.

(3)
Appellant next argues that the chancellor erred in not considering all the factors contained in § 76 (b) with respect *199 to his alternative rulings. We agree. Although, as we stated above, the chancellor gave an in-depth analysis of the facts as related to the provisions of the statute, we observe that no mention was made of sub-sections (b) (3) or (b) (4). We believe that, upon remand, the chancellor should make findings of fact as to each item listed in (b) so that a reviewing court will be able to properly perform its function.

(4)
Appellant's final argument is that the chancellor erred in not appointing counsel to represent the Clark children pursuant to Code (1957, 1981 Repl. Vol., 1982 Cum. Supp.), Art. 16, § 77B (a) (4),[4] and that, therefore, the case should be remanded for further proceedings. Although appellee agrees that the Code mandates appointment of counsel for the children, she contends that the error in this instance was harmless. Appellee asserts that because all the witnesses were extensively cross-examined, it is unlikely that any further evidence could be adduced by counsel appointed to represent the children.
We agree with appellant and, accordingly, shall remand this case to the Circuit Court for Washington County because of the failure of the chancellor to comply with § 77B (a) (4). This section requires the appointment of separate counsel to represent the person who is the subject of the instant proceeding which is one for the involuntary termination of parental rights. While the record does not reflect that this requirement was brought to the chancellor's attention, *200 we observe that the very persons for whom the statute was designed are too young to have raised the issue. In our view, the statute is mandatory and its violation requires us to remand the case as we cannot say that the children here were not prejudiced by the lack of an attorney.
Affirmed in part and reversed in part; remanded to the Circuit Court for Washington County for further proceedings consistent with this opinion; costs to be paid by the appellant.
NOTES
[1] Pursuant to ch. 514, Laws of 1982, section 75 was repealed by the legislature and reenacted with additions as section 76, effective July 1, 1982. See Md. Code (1957, 1981 Repl. Vol., 1982 Cum. Supp.), Art. 16, § 76.
[2] 76. Decree of adoption or guardianship without consent of natural parent.
(a) In general.  A decree of adoption or guardianship may be granted without the consents of the natural parents required under §§ 72 and 73 of this article, if the court finds by clear and convincing evidence that termination of the natural parents' rights is in the child's best interest, and that one or more of the following circumstances or sets of circumstances exists:
(1) The child is alleged to have been abandoned and after a thorough investigation by the child placement agency, it is concluded that the identity of the parents is unknown and no one has claimed to be the parent of the child within 2 months of the alleged abandonment.
(2) The child has been adjudicated a child in need of assistance, neglected, abused, or dependent in a prior juvenile proceeding. In determining whether termination of natural parents' rights is in the child's best interest in this case, the court shall consider the factors in subsection (b) of this section, and one of the following continuing or serious conditions or acts of the parents:
(i) A disability which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;
(ii) Acts of abuse or neglect toward any child in the family; or
(iii) Repeated or continuous failure by the parents, although physically and financially able, to provide the child with adequate food, clothing, shelter, and education, or other care and control necessary for the child's physical, mental, or emotional health and development. However, a parent legitimately practicing religious beliefs who does not provide specified medical treatment for a child, is not for that reason alone a negligent parent.
(3) (i) 1. The child has been continuously out of the custody of the parent and in the custody of a child placement agency for at least 1 year;
2. The conditions which led to the separation still persist, or similar conditions of a potentially harmful nature continue to exist;
3. There is little likelihood that those conditions will be remedied at an early date in order that the child can be returned to the parent in the immediate future; and
4. The continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent family.
(ii) In determining whether termination of natural parents' rights is in the child's best interest in this case, the court shall further consider the factors in subsection (b) of this section.
(b) Considerations in determining termination of natural parents' rights.  In determining whether natural parents' rights should be terminated under subsection (a) (2) or (a) (3) of this section, the court shall consider the following:
(1) The timeliness, nature, and extent of services offered or provided by the child placement agency to facilitate reunion of the child with the parent;
(2) The terms of any social service agreement agreed to by the child placement agency and the parent, and the extent to which all parties have fulfilled their obligations under the agreement;
(3) The child's feelings toward and emotional ties with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
(4) The child's adjustment to home, school, and community; and
(5) The effort the parent has made to adjust the parents' circumstances, conduct, or conditions to make it in the child's best interest to be returned to the parent's home, including:
(i) The extent to which the parent has maintained regular visitation or other contact with the child as part of a plan to reunite the child with the parent, although the court may not attach significant weight to incidental visitation, communications, or contributions.
(ii) The payment of a reasonable portion of substitute physical care and maintenance if financially able to do so;
(iii) The maintenance of regular contact or communication with the legal or other custodian of the child; and
(iv) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time, although the court may not consider whether the maintenance of the parent-child relationship may serve as an inducement for the parent's rehabilitation.
(c) Presumption where child has been in agency custody for at least two years.  (1) If a child has been under continuous foster care in the custody of a child placement agency for at least 2 years, the court shall presume that it is in the child's best interest to award to that child placement agency a decree granting guardianship, without the consent of the parents.
(2) In considering evidence to rebut this presumption the court shall consider all of the factors enumerated in subsection (b) of this section, with the exception of paragraph (5) (iv). (1982, ch. 514.)
[3] This holding does not affect the remaining provisions of § 76. See Md. Code (1957, 1981 Repl. Vol.), Art. 1, § 23.
[4] § 77B. Appointment of counsel in guardianship or adoption proceedings; examination of person whose consent is required; compensation of counsel.

(a) Appointment of counsel.  In a guardianship or adoption proceeding, the court shall appoint separate counsel to represent the following:
* * *
(4) In an involuntary termination of parental rights, the person who is the subject of the proceeding and an indigent parent...."